May it please the court. My name is James Jablonski. I represent the appellant in this case, Stephen Byrne. This is an appeal from the dismissal on a motion for summary judgment of a legal malpractice claim brought by Mr. Byrne. The immediate reason for the dismissal was a finding by the court that there was insufficient evidence to support Mr. Byrne being a person of ordinary skill in the string trimmer arts and consequently the judge decided that the case had to be dismissed. What is the level of skill that you're proposing? The level of skill I think is defined basically by the art as it existed at the time. String trimmers were advanced, Your Honor, as a substitute for cutting grass with a blade. They basically are a motor which rotates the flail or string instead of using a blade. There were difficult problems, some problems with that when it was used for trimming as opposed to in a vertical manner as opposed to a horizontal manner. What definition do you propose? Well, I propose it's a person who knew and understood the use of a string trimmer for its ordinary purposes, knew and understood what the problems were as it existed in 1992 that when used vertically it caused a poor outcome. Do you define any particular level of education or experience? I do not. I think the person should have experience in the manufacture, design, and use of a string trimmer as it existed at that time. Did Mr. Byrne have experience in the manufacture of a string trimmer? He did. Yes, he did. He had experience in the use of the string trimmers. Well, he was a landscaper so he used it, used it in manufacture. He did more than that. He also manufactured string trimmers, Your Honor. He had his own product which was based on his own invention. But isn't this appeal about the admissibility of certain proposed expert testimony? Isn't that reviewable on an abuse of discretion standard? Well, it did become an expert witness question, Your Honor. The judge began by deciding that Mr. Byrne was not a person of ordinary skill in the art. And as I pointed out in my briefings, there are substantial declarations and affidavits which he ignored, which detail his experience in the business as a designer, as a manufacturer, a person who knew the problems that customers were concerned with, and so on. And it's all in my brief. The judge then said generally, broadly, that under Kentucky tort law, in a legal malpractice case, you have to have an expert witness. Now, that's true enough. You do need to have a lawyer ultimately who testifies that the defendant's work fell below the standard of care. But we were nowhere near that point in this case. The issue that the defendants had insisted be reviewed initially was whether, was there contention that the patent examiner would not have permitted a claim without the fatal words generally plain are, and that the patent history record demonstrated that conclusively, that there could be no dispute to the contrary. And they made that motion. And in response to that motion, I argued in detail that the record did not need to be read that way, and that, in fact, it could be read another way. Then I provided two detailed affidavits, one from the inventor, which was 82 paragraphs long, over 10 pages, which addressed that a hypothetical claim without generally plain are was patentable. The only obligation that I had, Mr. Byrne had at that time, was to present evidence sufficient to establish an issue of material fact as to the patentability of the hypothetical claim that we were putting forward. That's what this court said in the Davis versus Brous or Bruce McDowell case, which addresses legal malpractice issues. So to answer your question specifically, I do not believe that at this phase of the litigation, in response to this very narrow motion for summary judgment made by the defendant, that any expert testimony was necessary to support advancing this hypothetical claim. A lay jury or fact finder could determine whether that was taught in prior art or was not taught in prior art. This art is not the most complicated prior art. And this court's precedents have said that you don't need an expert, even in an infringement case. Once the argument was framed by the defendant as simply that the patent examiner required this language and Mr. Byrne acquiesced in it, why didn't you file under Rule 56F asking for some discovery with respect to what occurred before the patent office? Well, the record was available to us. We had knowledge of what occurred before the patent office. Are you suggesting that I should have taken a deposition of a patent examiner? What about the deposition of the prosecuting attorneys? That is what the defendants did not want to happen and what the judge acquiesced in. The whole purpose of this motion was to preclude me from taking depositions of the lawyers that would hear on an evidence. I understand there was that whole discussion at the case management conference and there was that sort of motion buried in the case management report. But did you ever file a Rule 56F? The CMC actually said you had the right to. Wouldn't it have been better to file it, ask for it, and have it denied? Well, I thought there was no hope that the judge was going to permit me to take depositions of the defendant's lawyers. That's what Mr. Chambers was arguing against in the trial court and the trial judge acquiesced in that. But in all events, my burden at that time was to put forward evidence sufficient to support a hypothetical claim without generally planar. Your Honor, the key invention was not the shape of this flail-stabilizing device, but rather its position. Mr. Byrne understood that and the patent lawyer expert that we retained understood that. The patent lawyer working with Mr. Byrne prepared a hypothetical claim that was appropriate and that we contend, most importantly, they swore in an affidavit was achievable. That was sufficient to rebut the defendant's argument. I didn't have to take their depositions in order to ask them why they didn't pursue that claim. What they were saying is it doesn't matter why we didn't pursue that claim. It couldn't have been achieved anyhow. And if I had taken their deposition, that's what they would have said. That was their position. As I understand your reply, you appear to be abandoning your jurisdictional challenge. I am. This court basically decided in Davis that it was going to assert jurisdiction over legal malpractice claims, even when it concerns a hypothetical patent claim, which is never going to be a patent. I thought perhaps this court would not want to do that and would be willing to leave that to state courts, because that hypothetical claim is never going to be a real patent. It's just relevant for the malpractice case. It's still a patent issue, though. There is a patent issued in this case. Hypothetical or not. It's a hypothetical patent claim. Yes, indeed it is. But does it arise under the patent laws? I would argue that it doesn't, because it's hypothetical. But this court, in the Davis case, has decided that. When I read the Davis case, I said that's the end of my jurisdiction argument. I would, just to use my time here with respect to the key point, when the motion was made by the defendants for summary judgment, they attached five declarations of Mr. Burns, including a declaration of September 7, 1993. They referred to that declaration in their memorandum in support of their motion. It appears at appendix page 65. They specifically referred to the declaration. The contention now, after all of this is boiled down, the defendants here are left with the argument that I failed to present the evidence to the trial court, and that it was unfair to the trial court because I didn't set it out for him. Well, in the original motion, the defendants put this evidence in their brief. They referred to it in the brief. It was an attachment. It goes into great detail about Mr. Burns' history, about his work with these devices, his perception of the problems, his interaction with the customers, all of which appears on appendix 183 and continuing. When the ball bounced back to me, when I had to respond to his motion, I gave little thought to whether Mr. Burns was a person of ordinary skill in the art. It was obvious that that was true. I recited it in his declaration, and I provided additional paragraphs, much more than the two mentioned by the trial court. For example, in paragraphs 3, 4, and 5, which appear before the conclusory statement, it talks about during the time when Mr. Burns was considering his invention. He talks about flail trimmers, spring trimmers, how they were popular, how they were used. He talks about how workers used them to edge. He talks about the difficulty workers had. He talks about the clients complaining about the quality of the work. He then talks in detail about how he conceived his invention. He talks about competing products that were not successful. It goes on and on. Now, the trial judge, after I submitted my response, including this lengthy affidavit, which is in the record at A305 through A319, I believe, after I did that, the defendant had a chance to reply. And what did the defendant do? The defendant didn't argue that Mr. Burns was not a person of ordinary skill in the art. He argued that Mr. Burns was very knowledgeable about every aspect of this and that he fully participated in the patent prosecution, that he was the one who wanted generally plain art. Mr. Chablonsky, you wanted to save five minutes for rebuttal. You're on down to about two and a half. You can use it or save it as you wish. Oh, okay. All right. I didn't appreciate that. Well, let me just say in conclusion that Judge Erd, I don't know why he sua sponte, without any argument by anybody, made this ruling, but he failed to consider 95% of the evidence. That is an abuse of discretion. He also abused his discretion because he didn't follow the law in defining what the ordinary skill in the art was. Thank you. We'll save your rebuttal time. Mr. Chambers. Thank you, Your Honor. The district court judge excluded Burns as an expert in this case because Burns never sought to qualify himself as an expert. In his affidavit, he asserted only two things. One, that he had a Bachelor of Science degree in some unnamed discipline, and second, that in 1989 he had owned a landscaping company. Well, you never moved to exclude him, right? Well, here's the situation. They filed in response to our motion for summary judgment, they filed an affidavit of Mr. Keisel, who was their patent law expert. They filed this affidavit of Mr. Burns. We understood Mr. Keisel was being presented as a technical expert in the case. He had his full resume there, his CV was attached. We never understood that Mr. Burns was presenting expert testimony. The only thing in his affidavit was that he went to college, and that in 1989 he owned a landscaping company. So the position that we took was, and his affidavit also was a real- But you didn't take these positions anywhere in writing. You're saying you were thinking these thoughts, but the reality is you moved to exclude Keisel, you moved to exclude Burns, but never on these grounds. And you didn't seek to strike those portions of his declaration that the judge ultimately struck, did you? We moved to strike his- the position we took was, and this is in our response to the report, was that this Burns affidavit was such a muddle of opinion and fact that we didn't know whether it was supposed to be expert, not expert, or a combination of the two. We said, on these papers, we don't know, but for purposes of this motion, we're going to accept it, and we're going to move to strike Mr. Burns' declaration, which we did on grounds that it was a complete contradiction of everything he said in the patent office. So whereas he said in the patent office, I was fully capable of understanding the specification and claims- But that wasn't the basis upon which the district judge struck it, right? Yes, I understand that, Your Honor. The district judge, I think, moved back a step, and in his role as the gatekeeper under Daubert, addressed the initial question of whether Mr. Burns had any expertise to testify at all. But without a motion. Without a motion under Daubert. No one ever cited Daubert to him. No one ever said that we need to exclude it, right? That's correct. Let me ask you about your original filing, your motion. What in your motion for summary judgment raised an issue that required an expert to respond? We raised the issue. This is a negligence case, and we said we were not negligent. They posited a hypothetical claim that said, this is a claim that Woodheron should have obtained and that it was patentable. But your motion, your motion for summary judgment, was premised on a very narrow ground, which is why you convinced the judge there should be no discovery first, and the very narrow ground was, this is what happened in the patent office, and you can see it from the four corners of the record in the patent office. It was a factual ground, right? So you didn't have an expert, right? We didn't need an expert. You didn't have an expert, and what in your motion raised the need for a technical expert in response? It was a motion saying that this law firm was not negligent, that there was not a claim to be obtained, and even if they assert that it could have been obtained, it was not patentable. Once you say that it raises issues of patentability, then you implicate issues of anticipation and obviousness. Now, Mr. Byrne came back, and Mr. Keisel both came back, and argued at length as to what the Bartholomew reference disclosed to one of ordinary skill in the art, but they had no expertise to do that. I mean, there's all this talk in the record. If your motion was that broad, then relating to negligence and every other issue that has been raised, as opposed to a factual inquiry about what occurred and what Mr. Byrne acquiesced in, wouldn't there have needed to be discovery before you could have a motion for summary judgment? No, I don't believe so, Your Honor. I mean, if they wanted discovery, they could have asked for it. It's not our burden to present the testimony of the attorneys and all that sort of thing. We had to file history that said, you know, here's a sequence of events. Here's the claims that we attempted to solicit. You convinced the judge to put on a CMC that said no discovery, in a very lengthy case management position statement, correct? Yes, Your Honor. That was really a motion not tagged as a motion. So you convinced the judge not to have discovery. When you say they didn't ask for it, the judge never even gave them an opportunity for it. No, he did, Your Honor. We dispute that. What we said in our motion was that if they feel otherwise, that they do need discovery, they can raise it by Rule 56-F. And in the court's scheduling order, staying discovery, he has specifically said, plaintiffs, you have the opportunity to bring a Rule 56-F motion. It's plainly in there. What do you think the level of skill in the art is, since nobody seems to have discussed it? Well, it's difficult to say without expert testimony. But I think if you look at the Bartholomew reference, you can see that that string trimmer design is fairly complicated. And you're dealing with this element of their conversation of flail stabilization and all that. So you're dealing with the aerodynamics of a flail rotating at substantial RPMs. And I think this is a very sophisticated type business. You've got companies like Black & Decker and others who hired engineers in order to design these pieces of equipment. So I would say, you know, it's someone with an engineering degree and probably several years of experience in designing string trimmers and dealing with issues like the aerodynamics of high-speed rotating flails. And they talk about wobble and all this, but there's no, there's nobody in this case who has the expertise to talk about wobble or whether or not the Bartholomew reference didn't do the same thing. So if HEDA is not one of ordinary skill in the art and therefore can't testify, what does that do to your acquiescence argument? Well, there is no acquiescence. How does a client acquiesce in decisions that a patent lawyer makes with using a patent if they don't have a level of sophistication that would allow them to do that? Okay. There is no acquiescence argument here, but I think that question underlies. In your motion for summary judgment, there's an acquiescence. No. Not on the issues of patentability. What we said was Mr. Byrne said in his declarations, I fully immersed myself in this case. I understood what was in the specification. I understood what was in the claims. I understood what the examiner was saying. I even went to Washington and sat across the table from the examiner and discussed these things, and then the examiner made it clear to me that the claim that he was going to allow was this planar surface limitation. And then he said, that fully encompasses my invention. So he knew what he wanted to claim. He knew what his invention was. And he says, this fully encompasses my invention. So what we're saying is, he knew full well the scope of his invention, and he signed declarations that say, this encompasses the scope of my invention. So there's no negligence. Now, he says in his affidavit, I was clueless.  So when I sat with the examiner in January of 1993, I didn't understand what was going on. We can't review the merits of your summary judgment, because the trial judge never reviewed them. The point I'm trying to make, Your Honor, is that they're using that affidavit today to say that Byrne was an expert and could support his declaration or affidavit in this case. But they're also saying that in that very same affidavit, back in 1992 and 1993, he had no expertise. But it's on the same credentials. They don't cite any different credentials. It's the same thing. So what Byrne is trying to do is to have it both ways. And you can't have it both ways. But that's what he says you're trying to do. You say in your motion for summary judgment that he had sufficient expertise to understand and be steeped in this. And yet, then, you're now supporting the trial judge's decision that he didn't have enough expertise to describe his own invention. What I am saying, he had sufficient knowledge of what was going on in the patent office and discussions with the examiner and that sort of thing to say, yes, this covers my invention. But when you get to a court of law, you're not an administrative agency anymore. You're under Rule 702. In a court of law, and now he's saying, and then you have the objective issues of what does an anticipatory reference teach one of ordinary skill in the art. And that's got to come from an expert. That's got to come from someone who's got the expertise to talk to those issues. Let me ask you a question. Were you surprised by the way the trial judge ruled on your motion for summary judgment? Not at all, Your Honor. And for this reason, I was not surprised when he excluded Mr. Kiesel's testimony because that was clearly inadmissible under Sundance. He only, Byrne only raised this issue that, oh, I'm really the expert here, not Mr. Kiesel, by way of his motion for reconsideration of Mr. Kiesel that was filed, I think, in December of 2008. And he really didn't come out and say, you know, I'm an expert. I've got expert qualifications, anything like that. He was just sort of ipsy dixit. Yeah, now I'm the expert since Mr. Kiesel isn't. And I guess we could have filed another motion, but we didn't think it was necessary to burden the court with yet another motion, another opposition, another reply. We thought the court could figure it out based on this record, and they did. And I would say, Your Honor, that if the objection is that the judge acted sua sponte, that that issue has not been appealed, if it had been appealed, we could have briefed it, and we would have cited cases. And I can cite the court cases right now where the appellate courts have clearly upheld the power of a judge to strike expert testimony sua sponte in their gatekeeper role. Anything further, Mr. Chambers? Well, what I'd like to say, Your Honor, is that Mr. Byrne presented Mr. Sundance, and he fell back on his own position. And I think the district court was quite right, and it wasn't abusive discretion to raise that issue sua sponte as the trial judge in this case to say, is there any support here? And then this idea that you can go back into the record that was submitted on the file history and say, well, there's some qualifications here. I think, as Your Honor observed, those are all qualifications of looking. Of course, it's strange to find that an inventor does not have ordinary skill in the field in which he invents. But that perhaps goes to the weight of his testimony, that it's credible and self-serving more than to his level of skill? I don't think so, Your Honor. The Sundance case quite explicitly says that being an inventor does not qualify you as having ordinary skill in the art. And I know of no authority from this court that says that. I think you have to qualify yourself under Rule 702 when you're in a court of law and when you're asking for in excess of $2 million in damages. Is it a question of having ordinary skill or being an expert? Well, I think it's a question of having ordinary skill. Traditionally, we present an expert who's able to testify as to the attributes of one of ordinary skill in the art. How would they read an anticipatory reference? What unobviousness? What would a person of ordinary skill in the art think? And how would he solve problems? And you never presented any evidence as to what the ordinary skill in the art is?  And the judge never made any finding as to what the ordinary skill in the art is? And they never submitted anything. But what is apparent is that whatever the level is, Byrne didn't have it. Byrne never worked in the industry. He didn't have an engineering degree. He never worked by anyone in the industry to say, I know how these people solve problems. I know how they can take bits and pieces of the prior art and put them together. That's his invention? That's his invention. Isn't that his invention, basically? What he's done, is he a man of ordinary skill in the art because of his invention? No, I would dispute that, your honor. I think that's what Sundance says it's not. All he's done is to, you know, put this wok lid on this string trimmer. That doesn't answer any of the questions as to whether or not Bartholomew anticipates because inherently the wobble of the string would hit the And those are the questions we're looking at, not just, you know, what he did in his limited sphere. He just didn't have any qualifications to testify on those issues of level of skill as it relates to anticipation and obviousness. I'm trying to understand why he even had to, if your motion was not supported by any expert testimony. Your motion was purely factual. And it just said, this is what happened. This is what the record shows before the PTO. You didn't offer expert testimony. You have to have a properly supported motion for summary judgment before anyone has an obligation to respond to it. And if your summary judgment didn't raise technical issues, why was there even an obligation to present technical testimony in opposition to it? Because what our obligation was on summary judgment was to say, Byrne, you can't prove your case. There is no negligence here. Now, we don't have to devise a hypothetical claim and submit it and say, you know, this is a claim you think we should have gotten. And, you know, we couldn't get it. Once we raise summary judgment, and this is clear under the Supreme Court's decision in Solitext that says, you don't have proof to support a negligence case here. Then they come back. The burden shifts to them. Then they come back with a hypothetical claim. Once you submit a properly supported motion for summary judgment. We submit it was properly supported. Then they come back with a hypothetical claim and say, this is a claim you should have gotten and it was patentable. At that point, they have brought in the issue of anticipation and obviousness and level of ordinary skill. Thank you, Mr. Chambers. Thank you. Mr. Jablonski has two minutes plus. Judge O'Malley, your question is exactly correct. Mr. Chambers and his firm made a motion which was factual based. I had no obligation to present any expert testimony and a dismissal of the case because of a lack of any expert was error. Number two, let's turn to Mr. Bartholomew. This law firm prepared, as we know law firms do, a declaration on behalf of Mr. Byrne, which was submitted during the application. It appears at A186. It says, among other things and many other things, I have read Bartholomew patent number 491536 and have made the following observations. He goes on for pages distinguishing Bartholomew from his invention. Mr. Chambers is now telling the three of you that Mr. Byrne lacked the ability to discuss that. That is flatly contrary to what is in his own patent application that was submitted by this law firm. This hypothetical patent, are you saying that every time, essentially, that a lawyer before the PTO ultimately gets to the point where he gets something patentable, if later that's found not to cover some important infringing device, that you can go back and say, well, hypothetically we could have gotten a better patent? No. And that's an awfully high burden to put on counsel, isn't it? No. I think there will be some legal malpractice cases, but not many. There certainly have not been many to this point, but there have been some. You need to have a lawyer, a patent lawyer who's qualified, which I do, who's willing to testify that the prosecution of that patent fell below the standard of care for a competent patent prosecuting attorney. And in this case, I had that. I had exactly the evidence that this court said in Davis versus Bruce is required. I had more. In that case, the plaintiff lost. Their expert had never examined the prior art. Let's talk about Mr. Kiesel, my patent lawyer expert. Under Sundance, which I agree, which is for infringement cases, there is authority that says a patent lawyer can't testify in an infringement case about the substance of the invention because he's not expert. But this case is a legal malpractice case. The Davis case was decided after Judge Reeves made his, after we briefed it in this case, but before he made his decision. He didn't have the benefit of that case, and that's unfortunate. And I suppose I should have brought it to his attention later, but I didn't, and neither did the defendant. Mr. Kiesel's affidavit, which the judge also dismissed in the order, which I have appealed here, stated that the hypothetical claim was patentable, and that also supported my claim. And his discarding of that was also error. Now, I appreciate that I didn't argue this in my opening brief because I wasn't aware of the Davis case myself. But your opposing counsel would say that the critical language you rely on in Davis is really dicta. Oh, I don't think so. I think it, this court has decided it's going to take jurisdiction over legal malpractice cases, including these cases. Judge Reeves needs guidance from this court about what to do and about what expert testimony is necessary, and I think this decision should provide it. This is an area where there is relatively little case law. This court has issued this important opinion. You need to tell the trial courts what a patent lawyer can say in this affidavit. But the patent, you have to have a patent lawyer, and that patent lawyer has to be able to address the hypothetical claim. That's what patent lawyers do. They draft claims to say that. Thank you. Mr. Jablonski, your time has expired. Thank you. You can take the case on revising. Thank you. The court has adjourned until tomorrow morning at 10 o'clock a.m.